Case No. 24-3135, Jake Heiney v. Donna Moore, et al. Argument not to exceed 15 minutes per side. Mr. Alanya and Mr. Loray, you may proceed for the appellate. Thank you. May it please the Court, before we begin, Your Honors, my name is Steve Alanya. I direct the Appellate Clinic at Wash U Law in St. Louis. And it's my honor this morning to introduce the law students who are here with me on behalf of the appellate. So with me at counsel's table are Charlotte Morse and Colton Woodson, and presenting the oral argument this morning is Kyle Loray. Thank you. Thank you very much, and welcome to the Sixth Circuit. Thank you. You were your counsel this morning, so, counsel, you may proceed. May it please the Court, I would at this time like to request to reserve three minutes for rebuttal. Very well. Dr. Jake Heiney did not testify at his state court trial. However, nearly two hours of his recorded interviews with law enforcement were played for the jury. The content of these interviews was neither transcribed by the court reporter, nor reproduced in the state appellate court opinion denying him post-conviction relief. Then, on his petition for habeas corpus, the district court did not even consider whether to admit these and other exhibits from his trial. After conflating his motion to include trial exhibits with the previous motion to include unrelated documents, it denied the motion and dismissed his petition. This was error for three reasons. First, as this court has repeatedly recognized since its decision in Adams v. Holland, a federal district court reviewing a state court conviction for sufficiency of the evidence must consider the relevant portions of the entire record of the state court trial. Second, relevant trial exhibits, like those at issue here, are part of the entire record. And third, because Dr. Heiney has disputed the state appellate court's factual summary, the Adams rule's exception announced in Clark v. Waller does not apply. I have a question. Let me ask you this. Did you identify in your briefing the specific exhibits that you thought were critical to understanding your client's arguments, or are you simply saying that all exhibits from the trial needed to be looked at and perused by the district judge? And if there's specific exhibits that were critical to your client's arguments, have you explained in your briefing the significance or importance of those? Yes, Your Honor. So in our briefs, we point to Exhibits 6 and 12. Those are the interviews with law enforcement officers that were recorded and played for the jury, and Exhibits 11 and 15. Exhibit 11 is the audit log of the changes to the records, and Exhibit 15 is the copy of the records submitted pursuant to a subpoena. Those go, respectively, primarily to the gross sexual imposition charge and specifically the purpose of sexual gratification specific intent element, and as to the audit log and the medical records, to the tampering charge and specifically the purpose to defraud specific intent element. Those are the most important exhibits, though we believe that here the Adams rule should apply to all the exhibits because we are in the sufficiency of the evidence context. That claim does require a district court to review, essentially, the evidence that the petitioner was convicted on. To determine whether or not all of the evidence was sufficient, one needs to look at all of the evidence, and the trial exhibits that the prosecution offered, the 15 exhibits, are part of that relevant evidence. Now, if the transcripts flesh out what occurred or what is contained in the exhibits, why wouldn't, and fairly or arguably comprehensively do so, why then would it be necessary for the court to have the exhibits? So it is the case that if it were the case in the transcript that it covered the entirety of the exhibits, then the district court on a motion to include the trial exhibits could deny it because it was already duplicative of what was in the transcripts. Here that isn't the case. You have for the interviews, for instance, a start time and a stop time in the transcript. Only one of those interviews, the interview with Investigator Myers, actually includes any testimony in the transcript as to the contents thereof because Dr. Hiney did not testify. So we've got the second interview with Detective Bliss that has no testimony regarding its contents, and then the interview with Investigator Myers. Investigator Myers made statements about what occurred during that interview, but Dr. Hiney can test the accuracy of those statements, both in his objection to the magistrate's report and recommendations and in his original traverse. So if it were the case that the transcript accurately summarized all of the exhibits and there were no disputes to that, then the district court could make that determination. Here it appears the district court never actually considered the question of whether or not the trial exhibits should be included. So it never made that determination in the first instance that the transcript already contained everything that needed to be known. Moreover, we think that here Dr. Hiney doesn't actually have access to these exhibits. He does not have possession of them. He's trying to rely on his memory of interviews that took place 10 years ago. Well, let me ask you a question in that regard. So the dispute that you talk about having with the state court summary, in my mind, strikes me as more of a dispute with the conclusions that the state court came to based upon the facts that came in at trial. I don't take you to have an actual dispute with the summary in terms of its substance, what it says about what happened. Is that correct? No, Your Honor. So the summary is over the course of, the entire summary of the interviews takes place over the course of seven paragraphs. What part of it is incorrect? What part of the summary is incorrect or inaccurate? Yes. So we think, for instance, and Dr. Hiney points this out in his traverse and his objection to the report and recommendation, that it's incorrect when it talks about the chest examination, the conversation between him and Investigator Myers as to his normal procedures for an orthopedic chest examination. Dr. Hiney contends that in the context of that conversation, they were speaking of different procedures, that he repeatedly corrected the investigator on the terminology, and that that context is elided in the state appellate court's summary of the facts. Moreover, the context that he was not aware that they were talking about KO during the course of that interview is elided from the summary of the facts. He has specific objections to the way they've characterized it, but he can't prove any more details to those because, again, he does not have a copy of those exhibits. We think that saying that seven paragraphs of almost two hours of interviews is incomplete and has mischaracterized it based on his recollection should be enough to get over the threshold that this Court announced in Clark v. Waller to establish a dispute with the state appellate court's summary of facts. So I guess then my follow-up question for that is what part of these exhibits that did not come in would illuminate that this was an error in the summary? So we think that if one were to listen to the interview or if there had been a transcription of the interview, that we would be able to see that what the state appellate court summary states in its paragraphs 18 through, I think, 25, is not an accurate summary of what occurred in those interviews. They have different content. The context is different. And this is important because the state appellate court actually relied on what it called Dr. Hiney's personality in upholding the specific intent element of the gross sexual imposition charge. Now, it said that his personality was something the jury could have permissibly relied on, but he didn't testify. The only evidence they would have had as to his personality must have come from those interviews that they watched, that they had back in the room while they deliberated. So that's why we think that if the district court is to fulfill its obligation under Jackson v. Virginia and under AEDPA Section 2254d and review the entirety of the evidence on which he was convicted, it needs to look at those interviews. I think there wouldn't be a question that if, instead of occurring at a separate date prior to the trial, had the interviews had been a direct examination by his attorney and a cross-examination by the prosecutor, that removing those from the transcript would not follow the strictures of the Adams rule. Well, Adams says that you have to obviously read the transcript for the trial, at least as much as is necessary in order to make a determination on sufficiency, but it doesn't say anything about requiring that the district court go back and look at the state court exhibits. So what's your best authority for saying, no, you actually have to look at the exhibits? So we think that the Adams, you're correct, of course, that the Adams rule has thus far in this Court's decisions only been applied to transcripts. We think that the Adams rule's logic applies just as effectively to exhibits. And to be clear, the district court here had the transcript. Yes, Your Honor, it did. The transcripts, the basis of Dr. Hines' desire to include the exhibits is that he thinks the transcripts do not contain the information that is in the exhibits. But we also think that the text of AEDPA itself, specifically 2254F, is ample authority for this rule. It states that in the context of sufficiency of the evidence claims specifically, the petitioner, it is their burden to identify the portions of the record they think are pertinent to determining the merits of their claims and then provide them. But if the petitioner does not have a copy of those portions of the record, then it is incumbent on the state to provide them. And then only if those portions of the record are not available, then the district court can make a determination as to what weight to accord to the state's factual summary. So we think that the authority for this comes directly from the text of AEDPA, and we think that the logic of the Adams rule applies with equal force to the exhibits as to the transcripts. Indeed, I don't think that there's a positive principled reason to say that exhibits... Sometimes we look to other circuits to see what they've done in this area. Have any other circuits actually, like our circuit, required, just taking the Adams rule itself, have any other circuits required that district courts review the entire transcript the way we do? No, Your Honor. They don't. Some circuits have rejected that position. I think the Third, Fifth, and Eighth don't even adopt the Adams rule. They say you don't have to. We have this rule that says you have to look at the entire state court transcript. Most circuits say you don't have to do that. That's correct, Your Honor. We think that that rule, that the Adams rule, though, does give force to the text of AEDPA, and we think that the Adams rule... You want us to extend, so we're already out kind of on a limb, and you want us to go out further, from my understanding. We're going to go out to no circuits done what you want us to do. Most circuits don't even do what we already do. That's correct, Your Honor. Though most circuits, or a number of circuits do, it is permissible always to look at the transcripts, and a number of circuits have recognized that sometimes it's good or necessary to look at the transcript, though they haven't adopted a rule. Though this court itself has not characterized Adams as a blanket rule. There's the Clark exception for when no party is disputing the state appellate court's factual summary. There's no need to look at the transcript when no one thinks... Habeas relief is supposed to be pretty rare. We have a lot of cases saying that it's extraordinary. There has to be a serious malfunction in the state court proceedings. So whether I agree with the transcript rule or not, I would think that if you've read the transcripts, you're going to know whether there was a serious malfunction. You might not know everything. There might be other things that help enhance your understanding of what happened. But our job is to figure out whether there's been a serious malfunction in the state court proceedings. If you read the transcript, I think you're going to get it. If there has been such a serious problem, it's going to be apparent. So the exhibits might add to that, but the point is we need to detect whether there's been a big problem. I think the transcripts are more than enough to suggest that. Then that might suggest further investigation, but the transcripts itself are going to tell us whether there's been such a grievous error in the state court proceedings that we need to intervene as a federal habeas court. If I may briefly respond, I think that, yes, I understand that. In many cases, in fact, the transcript will likely be enough. In those cases, when a petitioner says, please also include the trial exhibits and they put in their motion this is why, then the district court can make that determination in the first instance. It never made that determination here. But I also think that it's important to remember that part of the reason this rule exists is the interest in comedy, that when there is a grievous malfunction, the federal district court should never be in the position of overturning a state court conviction without having looked at the entirety of what the state court saw and did. So that's why it's important to have this rule in the first place to make sure that the habeas courts are not getting away or getting out in front of their role in this context. Thank you. Thank you very much. Next question. Good morning. May it please the court. I'm Evie Jarrett, appearing on behalf of the respondents in this case. A remand to the district court is unnecessary for a couple different reasons. First of all, as the panel has already pointed out, the district court was equipped with a full set of the transcripts of the trial proceedings. They were able to go through those transcripts, assess the state court's recitation of the facts, and then evaluate the legal determinations made based on those facts. Secondly, I would contend that even if the court were interested in treading the new ground of extending the rule in Clark to cover exhibits in certain cases, this is not a good case to try to do that. This is a case where the exhibits in question were, in fact, discussed at considerable length by the witnesses in the trial, and that discussion appears throughout the transcripts of the trial itself. I first want to, I guess, challenge my friend's characterization of the 6th District's opinion as saying that the jury looked at his personality. I don't think anything could be farther from the truth. What the 6th District did was cite to another district court's holding that offered kind of a laundry list of the things that could be used by a jury in determining whether sexual gratification was evident in the evidence at the trial. Among those things was the defendant's personality. But again, this is a quotation from the 2nd District, not the 6th District that was sitting. There was no jury instruction given telling the jurors that they could look to his personality as revealed through the evidence at trial. That one reference to personality came from another district, another quotation, that really was untethered to any facts in this particular case. The second thing that I would push back on is the characterization of the interviews as they appeared. If we read the reply brief submitted on behalf of Dr. Heine, we're led to think that these interviews were popped in, they were played, and there was no discussion whatsoever. In fact, the witnesses testified at length about what had occurred during those interviews, and that was before and after the interviews were played. So we know a lot of the information that the state court relied on in saying that, yep, there's evidence here of sexual gratification, and, yep, it's apparent from the evidence in the transcript that the timing of the change of the medical records related to K.O. suggested an intent to defraud. So we have, for example, by my count, I was up to about 100 pages of transcript discussions of Detective Bliss and Amy Meyer's interviews of Dr. Heine. And I stopped counting at that point because I figured nobody here would be interested in listening to me go through all of that. But we have the discussion of things where he stated during his interview, I don't remember K.O. I have no independent recollection of her. I can tell you what my general practices are in examinations, but I don't remember K.O. So now to hear several years down the road that he didn't even understand that they were talking about K.O. is a little difficult, and it's hard to reconcile with the transcript without regard to whether or not we played the interview. We have a transcript of the individual saying, yes, we interviewed him on this date. He said he had no recollection of K.O. The next day he instructed his office staff to make a change to her medical record to accommodate what the course of that discussion the previous day. Those two things, I think, really should shape the court's evaluation of this issue. We have a scenario where not only do we have the transcripts, but we have a lot of discussion as to what happened in the interviews of this defendant. With respect to the remaining two pieces of evidence that were identified during the argument this morning, the audit log and the medical records, what happened, you'll see in the state court's opinion, there was actually a chart, a side-by-side comparison of what the medical record was prior to the law enforcement interview, and next to that was the additions that were made the morning after that interview occurred. There has been no suggestion other than this morning's suggestion that Dr. Haney didn't remember or didn't know that they were talking about K.O. There was never any discussion that that was inaccurate. There was never any discussion that the summary was inaccurate. In fact, the defense all along was, yeah, I had consent to do everything I did. So it wasn't a question of confusion or inaccuracy. It was more of, yeah, I remember it, and yeah, I made the changes that were supposed to accurately reflect what happened during the treatment of this particular individual. So just to—I don't want to take unnecessary time because I believe that the panel has already indicated an understanding of the rule that the district has followed. We have a scenario where the rule actually does not require the exhibits to be provided. We also have a situation where now we're hearing, I don't have access to these exhibits, they weren't available to me. Haney was represented by counsel at the time that he made his first motion to expand the record in this case. He did have counsel. They requested, I believe, dozens of documents to expand the record. That request was mostly denied because most of those items had not been before the trial court, the state court. But certainly at that point when he was represented by counsel, that would be the time to say, hey, how about we add in these documents, these recordings that we see now as being really important and that we have a factual issue with. That didn't occur. It was only after the recommendations that we have this motion to include the trial exhibits. If there are any questions, I'd be happy to answer them to the best of my ability. Otherwise— Apparently not. I think we have your argument in hand. Thank you. Thank you. You may proceed with your rebuttal argument. May it please the Court. There are two important questions here today. The first is whether or not the Adams Rules Force should apply to trial exhibits in addition to trial transcripts. The second is that if that is the case, whether or not Dr. Haney can avail himself of that rule under Clark v. Waller. We think the answer to both of those questions is yes. The first being that there are going to be times when a trial exhibit such as here is not reflected in the transcript, where the content of the interviews is not in there, or to the extent that you have one witness, Investigator Myers, discussing the content of their interview with Dr. Haney, you don't have the information as to whether or not that includes all of the interview. Dr. Haney contests the accuracy of her statements and of the State Appellate Court summary of the facts. He says that if you look at the interview, you'll see that they misstated it. The rule in Clark v. Waller, of course, is only that you must dispute the summary of the State Appellate Court, not that you have to dispute it to some high bar to show that this merits it. It's just a question of whether or not the parties have agreed that the State Appellate Court summary is sufficient that we can avoid making an independent review under AEDPA of the State Court record. Because Dr. Haney has disputed that summary, we think that if the Adams rule should apply, it should apply to him. Well, it doesn't matter that your client has disputed the summary. The court would have to ascertain whether your client's arguments in that regard are well taken, correct? Yes, Your Honor. The district court should have made that determination in the first instance. Here it did not do so. He didn't expressly make the determination on the record, but he read the transcript and didn't find it necessary apparently to look at the exhibits. How do we know that he didn't take into account the need or lack of need to look at the exhibits? Because, Your Honor, when explaining why he was agreeing with the magistrate's recommendation to dismiss the petition and deny the motion, it relied on it cited to a page in the magistrate's report referring to a previous motion, one for supplemental documents that were largely post-conviction. And then it said that it makes sense that these trial exhibits should not be brought in because the district court probably could not properly consider things that weren't before the trial court. But trial exhibits are per force something that was before the trial court. So we know that it did not consider the motion as of itself. It did not do that at all. So we think that at a minimum in the first instance it should take a look at those exhibits and determine whether or not it's necessary to look at them. Well, how does the court determine if it's necessary to look at the exhibits without looking at the exhibits if we follow your argument to the logical conclusion? It would rely on the pleadings of the parties as to whether or not the exhibits are going to be relevant under the Adams rule, the same way it would with relevant portions of the transcript under the currently existing rule. Therein over. All right. Anything further? No, Your Honor. Thank you. All right. Well, thank you for your argument, and the case is submitted.